UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT LOERA,<br><br>Defendant. | Case No. 15-CR-00285-LHK-9<br><br>**ORDER DENYING COMPASSIONATE RELEASE**<br><br>Re: Dkt. No. 899 |

Defendant Robert Loera ("Defendant"), is currently in the custody of the Bureau of Prisons at the Federal Transfer Center in Oklahoma City, Oklahoma ("FTC Oklahoma City"). Defendant moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which is also known as compassionate release. ECF No. 899 ("Mot."). For the reasons set forth below, the Court DENIES Defendant's motion for compassionate release.

I.  **BACKGROUND**

Defendant was part of a criminal enterprise whose members allegedly committed capital crimes. Specifically, on October 28, 2015, Defendant and eight co-defendants were charged with 73 counts of racketeering conspiracy, murders, attempted murders, accessory after the fact to attempted murder, assault with a dangerous weapon, and armed robberies. Presentence

Investigation Report ("PSR") ¶ 2, ECF No. 543. Six of the nine defendants were eligible for the death penalty. On January 4, 2017, the government elected not to seek the death penalty against four defendants. ECF No. 137. However, on September 18, 2018, the government elected to seek the death penalty against defendant Victor Skates. ECF No. 494. The government has not yet decided whether it will seek the death penalty against the last defendant, Daniel Chavez.

On November 6, 2015, Defendant was arrested pursuant to the 73-count federal indictment. *Id.* ¶ 3. Defendant pled guilty on July 18, 2018 to two counts in the indictment: (1) Racketeer Influenced and Corrupt Organization Act ("RICO") conspiracy; and (2) accessory after the fact to Violent Crimes in Aid of Racketeering ("VICAR") attempted murder. ECF No. 409 at 2 (plea agreement). Defendant admitted that from at least 2009 through 2011, Defendant conspired with fellow gang members to commit murders and armed robberies, traffic narcotics, and tamper with witnesses. *Id.* at 4. Among other things, Defendant specifically admitted that he:

- Allowed fellow gang members to use his house "as a safe haven or a type of home base at which to plan robberies and shootings, regroup after such crimes, monitor police communications and respond to crimes utilizing a scanner, and store firearms and other robbery tools and proceeds." *Id.*

- Participated in at least five armed robberies, including the robberies of a CVS pharmacy; three jewelers; and a Chase bank. *Id.* at 5–6. During each robbery, Defendant's fellow gang members brandished firearms. *Id.* During the bank robbery, a fellow gang member grabbed and restrained a female victim. *Id.* at 6.

- Aided and abetted fellow gang members' use of firearms "while they were performing violent crimes on behalf of the [gang], such as the murders, attempted murders, and robberies." *Id.* at 5.

- Knew and agreed that gang members "would kill, and try to kill, actual and suspected [rivals], persons who defied the will of the gang, and persons suspected of cooperating with law enforcement." *Id.*

- Picked up two fellow gang members, on November 5, 2010, after one of them shot suspected rivals. Defendant "drove [his fellow gang members] out of the area to help them avoid being caught by police in the car in which they had just done the shooting." *Id.* Two of the gang's victims were struck by bullets. One victim suffered serious bodily injury from being shot in the hand and grazed on the head. *Id.*

Given his violent crimes, Defendant agreed in a Federal Rule of Criminal Procedure 11(c)(1)(C) binding plea agreement that Defendant should be sentenced to between 10 and 18 years in prison followed by five years of supervised release. *Id.* at 11.

On October 24, 2018, the Court sentenced Defendant to 12 years to be followed by five years of supervised release. ECF No. 568 at 2. This sentence was below Defendant's Guidelines range of 151 to 188 months (12.6 to 15.7 years). PSR ¶ 110. Defendant is currently serving his sentence at FTC Oklahoma City.

During the period of his membership in the violent gang, Defendant suffered a felony conviction for receiving stolen property—namely a stolen .40 caliber Glock handgun. *Id.* ¶ 83. Moreover, during the same period, Defendant was arrested for murder after Salinas, CA police found a gun hidden in Defendant's garage. *Id.* ¶ 85. Police tested the gun and found that it had been used in at least nine different shootings in Monterey County, including six homicides or attempted homicides. *Id.* ¶ 85. However, Defendant was not charged with murder. *Id.*

To date, Defendant has served only five years of his 12-year sentence. Assuming good time credits, Defendant's projected release date is January 20, 2026. Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited Dec. 29, 2020). In the instant motion, Defendant asks that the Court "modify his sentence from incarceration in prison to a term of supervised release to include home detention and other conditions the Court determines appropriate." Mot. at 10.

## II.   LEGAL STANDARD

18 U.S.C. § 3582(c) allows a court to modify a defendant's "term of imprisonment . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

"[A]fter considering the factors set forth in § 3553(a) to the extent applicable," a court

3

Case No. 15-CR-00285-LHK-9
ORDER DENYING COMPASSIONATE RELEASE

may grant compassionate release in two circumstances. As relevant here, a court may reduce a defendant's sentence and thereby release a defendant if the court finds "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). The relevant Sentencing Commission policy statement enumerates several "extraordinary and compelling reasons." U.S. Sentencing Guidelines ("U.S.S.G") § 1B1.13(1)(A) & cmt. 1. A defendant fulfills one of the enumerated reasons when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. 1(A)(ii). The Commission also requires that the defendant not pose a danger to the safety of the community. *Id.* § 1B1.13(2).

## III.   DISCUSSION

In analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), courts determine whether a defendant has satisfied three requirements. First, a defendant must exhaust her administrative remedies. *United States v. Trent*, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020). Second, a defendant must establish that the § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission" are "consistent with" granting a motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A). The "applicable policy statements" require, among other things, that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Third, a defendant must demonstrate that "extraordinary and compelling reasons"—as defined by the applicable Sentencing Commission policy statement—"warrant . . . a reduction" of sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

Here, the government concedes that Defendant has met the first and third requirements. As to the first requirement, the government concedes that Defendant has exhausted his administrative remedies. Opp'n at 3; *see* 18 U.S.C. § 3582(c)(1)(A) (allowing a court to modify a term of imprisonment "upon motion of the defendant after . . . the lapse of 30 days from the receipt of

4

such a request [to bring a motion on defendant's behalf] by the warden of the defendant's facility"). As for the third requirement, the government concedes that although Defendant is 40 years old, he "has presented extraordinary and compelling medical reasons" for release given his diagnosis of type 2 diabetes and the current severity of the pandemic. Opp'n at 9.

Thus, only the second requirement is at issue in the instant case. The government argues that Defendant fails to meet the second requirement in two ways. First, the government argues that Defendant is a danger to others. *See id.* at 14–17. Second, the government argues that the § 3553(a) sentencing factors weigh against Defendant's release. *See id.* at 17–19. The Court agrees with the government's arguments and addresses each in turn.

**A.  If released, Defendant would pose a danger to others.**

In finding that Defendant is a danger to others, the Court weighs the factors "provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Specifically, the Court considers:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [*i.e.*, sex trafficking of children], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The Court considers each of the four factors in turn.

First, as for "the nature and circumstances of the offense charged," Defendant committed serious violent crimes that involved firearms. Specifically, as detailed in the Background above,

Defendant participated in five armed robberies of stores open to the public. Moreover, Defendant helped fellow gang members commit murders, attempted murders, and "hunts" for suspected rival gang members for at least two years. ECF No. 409 at 5. For instance, Defendant admitted to being the getaway driver on November 5, 2010 for a fellow gang member who had just shot two people.

Defendant admitted that he "engaged in all of the foregoing in order to maintain and increase my position in the [gang]." *Id.* at 6. Violence against gang rivals, Defendant explained, "is the quickest way to earn prestige for the individual gang member, his clique, and [the gang] in general." *Id.* at 4. Defendant conceded that the gang "hurt or killed" "many innocent individuals . . . as a result of mistaken identity or for being in the wrong place at the wrong time." *Id.*

Second, the evidence against Defendant is incontrovertible. Defendant has pled guilty to (1) RICO conspiracy; and (2) accessory after the fact to VICAR attempted murder. To support his plea, he specifically admitted to egregious violent conduct. Among other things, Defendant not only participated in five armed robberies, but also allowed fellow gang members to use his house "as a safe haven or a type of home base at which to plan robberies and shootings, regroup after such crimes, monitor police communications and respond to crimes utilizing a scanner, and store firearms and other robbery tools and proceeds." ECF No. 409 at 4. Defendant's past use of his home as a gang haven means that releasing Defendant to home detention (as Defendant requests) would potentially pose a danger to the community. *See* Mot. at 8–10 (proposing home detention).

Third, Defendant's "history and characteristics" include two prior offenses for possessing a weapon. The first prior offense is a 1999 misdemeanor for possession of a dangerous weapon. PSR ¶ 82. The second prior offense is a 2011 felony for possession of stolen property—namely, a .40 caliber Glock handgun. PSR ¶ 83. Moreover, during the period of Defendant's membership in the violent gang, Salinas police found a gun hidden in Defendant's garage in 2011. Police tested the gun and found that it had been used in at least nine different shootings, including six homicides or attempted homicides. *Id.* ¶ 85.

Fourth, given the seriousness of Defendant's offenses—and his association with gang members who have murdered, robbed, trafficked drugs, and allegedly committed capital crimes—

Defendant's release would pose a serious danger to others. It is well-settled that a defendant's record of firearms- and gang-offenses may show that he poses a danger. *See, e.g.*, *United States v. Daychild*, 357 F.3d 1082, 1100 (9th Cir. 2004) (affirming pre-trial detention of defendant who allegedly possessed a firearm because the "danger posed to the public by armed conspirators who traffic in illicit drugs is too plain to permit dispute"); *United States v. Arceneaux*, 830 F. App'x 859 (9th Cir. 2020) (affirming denial of compassionate release based on defendant's armed robberies and criminal history).

In sum, Defendant would pose "a danger to the safety of an[]other person or to the community" if the Court were to release him. U.S.S.G. § 1B1.13(2). Thus, the Court cannot release Defendant because to do so would violate "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

### B. The § 3553(a) sentencing factors also weigh against Defendant's release.

The Court also denies Defendant's motion for compassionate release for another independent reason: "the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Those factors include, among other things, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed medical care in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a). Here, granting Defendant's motion would undermine the § 3553(a) factors in two ways.

First, as discussed above, releasing Defendant would fail "to protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). Defendant would pose "a danger to the safety of an[]other person or to the community" if the Court were to release him. U.S.S.G. § 1B1.13(2).

Second, Defendant has only served five years of a 12-year sentence for violent crimes.

That 12-year sentence is already below Defendant's Guidelines range of 151 to 188 months (12.6 to 15.7 years), and within the 10 to 18 year sentencing range to which Defendant agreed to serve in his binding Rule 11(c)(1)(C) plea agreement. PSR ¶ 110; ECF No. 409 at 11. Assuming good time credits, Defendant's projected release date is January 20, 2026. Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited Dec. 29, 2020). Thus, granting compassionate release would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, or afford adequate deterrence to criminal conduct as required by 18 U.S.C. § 3553(a)(2)(A)–(B).

In sum, the § 3553(a) sentencing factors also weigh against Defendant's release.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for compassionate release.

**IT IS SO ORDERED.**

Dated: December 30, 2020

                                                                        *Lucy H. Koh*
                                                                        LUCY H. KOH
                                                                        United States District Judge